# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL M. ZAKHEIM, Individually** | ) | |
| **and on Behalf of All Others Similarly** | ) | **Case No. _____** |
| **Situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CURB MOBILITY, LLC,** | ) | |
| **TAXI BUTLER B.V. d/b/a VENUE** | ) | **COMPLAINT – CLASS ACTION** |
| **BUTLER, and YAIKS, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Samuel M. Zakheim ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Curb Mobility, LLC ("Curb Mobility"), Yaiks, Inc. ("Yaiks"), and Taxi Butler B.V. d/b/a Venue Butler ("Venue Butler" and together with Curb Mobility and Yaiks, the "Defendants"). In support thereof, Plaintiff states and alleges as follows:

## INTRODUCTION

1. Almost every taxi in Philadelphia, New York, Los Angeles, Chicago, Washington D.C., and Fort Lauderdale uses software from a company known as Curb Mobility. Curb Mobility's software is integrated into every taxi meter as a conduit for processing payment cards, and it also calculates the fares riders are charged while operating as a taxi-hailing mobile application that uses the following logo: 

2. The case is about how Plaintiff Samuel Zakheim and others like him are getting ripped off by Defendants through secretly charged, undisclosed service fees.

1

3.      On August 18, 2022, Plaintiff went to the lobby of his hotel on Broad Street in downtown Center City, Philadelphia, and asked the clerk to call him a taxi.

4.      The clerk pressed a button on a yellow device nearby.

5.      The yellow device is actually taxi-hailing hardware marketed by co-Defendant Venue Butler as a free service to hotels, bars, restaurants, and other venues.  It looks like this:



6.      Defendant Venue Butler's marketing says: "One press of a button and a taxi is on its way to pick up your guests."

7.      That is what happened to Plaintiff. He waited near the front entrance of the hotel until a taxi came and picked him up.

8.      At no time did anybody mention the existence of any service fee to Plaintiff, nor were any service fees displayed on the screen inside the taxi.

9.     The Curb logo  and name of Defendant Curb Mobility appeared on the display of the screen inside the taxi; the name of Defendant "Venue Butler" appeared nowhere on the screen.

10.     When Plaintiff arrived at his destination, the fare on the screen was $6.80, and he elected to tip $2.00, making a grand total of $8.80 due and owing. He paid by credit card using the merchant processing machine connected to the screen inside the taxi.

11.     At all times, the amounts on the screen of the merchant processing machine inside the taxi matched the amounts listed in paragraph 10 above.

12.     After the transaction was complete, Plaintiff requested a paper copy of his receipt, which reflected an undisclosed service fee of $2.50 and a grand total charge of $11.30.

13.     Here is a picture of Plaintiff's paper receipt (with zoom-in on the $2.50 service fee), that the taxi driver handed to him as he was getting out of the cab on August 18, 2022:





14.     Plaintiff was shocked to see that he had been charged $11.30—two dollars and fifty cents more than the amount that was disclosed to him on screen in the taxi. He was shocked again to check his credit card statement and confirm the overcharged total of $11.30.

15.     Upon information and belief, Defendant Curb Mobility exercises authority and control of taxi meters, the screens inside the taxis and the merchant processing machines inside taxi cabs in Philadelphia and other big cities in the United States.[1]

16.     When taxi rides are initiated by pressing the button on Defendant Venue Butler's device, Defendants on the back end charge a hidden service fee to Plaintiff and class members who are completely blindsided by it.

17.     Plaintiff and class members are never given notice of the service fee and are never given the opportunity to consent to being charged the service fee for taxi rides that originate from pressing the Venue Butler button. Nor have they ever consented to such a fee.

18.     This class action is about the hidden fee that Defendants charged Plaintiff without his knowledge and consent. Defendants continue to illegally charge fees to consumers and class members who order taxi rides summoned by pressing the Venue Butler button.

19.     Plaintiff Samuel M. Zakheim seeks to represent a class of riders who were illegally charged a service fee that was never disclosed to them and that they never consented to, on taxi rides that originate from pressing the Venue Butler button.

20.     As a result of Defendants' fraudulent scheme, Plaintiff got slammed with a service fee of $2.50. According to Venue Butler's website, the company is "loved by 25,000+ hotels, bars,

---

[1]  *See*  https://www.entrepreneur.com/leadership/how-curb-mobility-brought-taxi-rides-into-the-21st-century/425386 (last visited November 11, 2022).

and restaurants around the world" and it has partnerships with Marriott, Hilton, Hyatt, Radisson, IHG, and other major hotel chains.[2]

21.     Upon information and belief, in addition to Philadelphia, Defendants are using unfair and deceptive business practices and charging undisclosed fees in other cities, including New York, Chicago, Washington, D.C., and others.

22.     Because this is happening to thousands of other consumers in cities across the country, Plaintiff brings this action to recoup his losses and those of putative Class members against Defendants for conversion, unjust enrichment and for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et seq.* ("UTPCPL"), as well as other similar statutes nationwide.

## PARTIES

23.     Plaintiff Samuel M. Zakheim is an individual resident of Philadelphia County in the Commonwealth of Pennsylvania.

24.     Defendant Curb Mobility LLC is a Delaware limited liability company with a principal place of business at 11-11 34th Avenue, Long Island City, NY 10011. Upon information and belief, none of the members of Curb Mobility LLC are citizens of Pennsylvania.

25.     Defendant Taxi Butler B.V. d/b/a Venue Butler is a Dutch company with a principal place of business at Keizersgracht 169, 1016 DP Amsterdam, Netherlands.

26.     Defendant Yaiks, Inc. is a Delaware corporation with a principal place of business at 2382 Kimridge Road, Beverly Hills, CA 90210.

27.     Upon information and belief, at all times relevant hereto, Defendant Taxi Butler B.V. and Defendant Yaiks, Inc. owned and were doing business as Venue Butler. Hereinafter,

---

[2] https://www.venuebutler.com/ (last visited November 10, 2022).

"Defendant Venue Butler" shall refer to Defendants Taxi Butler B.V. and Yaiks, Inc. doing business together as Venue Butler.

## JURISDICTION AND VENUE

28.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendants.

29.     The Court has personal jurisdiction over Defendants because at all relevant times Defendants have transacted, solicited, and conducted business in Pennsylvania through employees, agents, and/or sales representatives and derived substantial revenue from business in Pennsylvania.

30.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in the Eastern District of Pennsylvania and specifically in the City of Philadelphia, because Plaintiff resides in this district and the transaction at issue occurred in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## INDIVIDUAL PLAINTIFF'S CAUSE OF ACTION

31.     As stated above, Plaintiff was charged an undisclosed $2.50 fee when he took a taxi ride from a hotel on August 18, 2022.

32.     When Plaintiff asked the clerk at the hotel to call him a taxi, there was no notice whatsoever to Plaintiff that a service fee would be charged for the upcoming taxi ride.

33.     While Plaintiff was at the hotel and waiting just outside for his taxi, there was no sign or notice forewarning him that his taxi ride was subject to a service fee of $2.50.

34.     Inside the taxi, Plaintiff noticed a Verifone merchant processing machine with a screen that advertised Defendant Curb Mobility's corporate logo, similar to the picture below:



35.     The screen inside the taxi did not disclose the existence of a service fee connected to Plaintiff's ride.

36.     The total fare for Plaintiff's ride was $6.80, and he tipped $2.00 for a grand total of $8.80.

37.     Plaintiff used the merchant processing machine inside the taxi to pay by credit card.

38.     He agreed to pay $8.80.

39.     After the transaction was complete, Plaintiff requested a paper copy of his receipt, a true and correct copy of which is shown above at paragraph 13.

40.     The total amount on Plaintiff's paper receipt did not match the total amount of $8.80 that was depicted on the screen of the merchant processing machine inside the taxi.

41.     Plaintiff's receipt showed a service fee of $2.50 and a grand total charge of $11.30.

42.     Plaintiff was charged a service fee of $2.50 without his knowledge or consent.

43.     If Plaintiff had known that he would be charged a service fee of $2.50, he would not have agreed to accept a ride in the taxi that was summoned via Defendant Venue Butler's device.

44.     Plaintiff was never given notice of the service fee and he never got the opportunity to reject or consent to the service fee.

## DEFENDANTS' SCHEME

### A.  *Background on Merchant Processing in Taxis and Curb Mobility's Growth*

45.     Taxis were traditionally a cash-only business.

46.     Starting about two decades ago, taxis in Philadelphia and New York were outfitted with mobile credit card payment systems. This revolutionized the industry.

47.     During this time, the biggest player in the business of merchant processing of point-of-sale transactions in taxis was TaxiTronic, which then partnered with Verifone, Inc. to form Verifone Transportation Systems, Inc. ("VTS").

48.     VTS expanded to markets throughout the U.S. and introduced new innovations such as Taxi TV, a digital screen inside the taxi that created an additional revenue source through ad placement.

49.     By the next decade, licensed taxis faced increased competition from the emerging rideshare industry represented by mobile applications like Uber and Lyft.

50.     As the popularity of ride-hailing apps exploded in 2012 and 2013, taxi fleets could not compete without adapting to the changing times and adopting comparable technology.

51.     In 2016, VTS launched its mobile taxi application, known as the "Curb App."

52.     VTS marketed the Curb App as a universal application that could be used to call a licensed taxi or livery vehicle.

53.     In or about 2018, VTS was purchased by Defendant Curb Mobility.

54.     Upon information and belief, through its acquisition of VTS, Defendant Curb Mobility took over authority and control of merchant processing of point-of-sale transactions inside taxis throughout the U.S. Among other things, this acquisition allowed Curb Mobility access to the meters inside every taxi.

55.     Upon information and belief, Defendant Curb Mobility charges a service fee to users of the Curb App who summon taxis using the Curb App. If the Curb App is not used to summon or pay for a particular taxi ride, the user has not agreed to pay a service fee and is not charged such a fee.

### B. Venue Butler's Partnership with Curb to Surreptitiously Overcharge Customers

56.     The contraption distributed by Defendant Venue Butler is a taxi booking device—literally a button on a piece of hardware —for venues like hotels, bars, and restaurants. A picture of the Venue Butler button is depicted above at paragraph 5.

57.     Upon information and belief, when the Venue Butler button is pressed, it triggers a request in Defendant Curb Mobility's network for a taxi to pick-up the customer at the desired location.

58.     Defendant Venue Butler markets itself as a free service to hotels and other venues, and does not solicit business directly from riders.

59.     Defendant Venue Buter has introduced its button to tens of thousands of venues around the world, including, for example, more than fifty venues in Washington, D.C. alone.[3]

60.     The Venue Butler button can also be found in at least the following venues in Philadelphia, New York, Chicago, New Orleans, and Asheville:

---

[3] *See* https://dcyellowcab.com/taxi-butler/ (last visited November 11, 2022).

- AC Hotel Asheville Downtown – Asheville, NC
- ACME Hotel Company Chicago – Chicago, IL
- AKA Hotels+Hotel Residences – Philadelphia, PA
- The Bowery Hotel – New York, NY
- Broadway Plaza Hotel – New York, NY
- Cambria Hotel Philadelphia Downtown Center City – Philadelphia, PA
- Canopy by Hilton – Philadelphia, PA
- Dylan Hotel NYC – New York, NY
- Equinox Hotel – New York, NY
- Four Seasons Hotel – Philadelphia, PA
- Hilton Garden Inn Philadelphia Center City – Philadelphia, PA
- Hilton Midtown Cluster (multiple locations) – New York, NY
- Holiday Inn Express Midtown – Philadelphia, PA
- Holiday Inn Express Penns Landing – Philadelphia, PA
- Hotel 48LEX – New York, NY
- Hotel Belleclaire – New York, NY
- Hotel Le Soleil – New York, NY
- Hotel On Rivington – New York, NY
- Hotel Saint Vincent – New Orleans, LA
- INNSiDE by Meliá – New York, NY
- Kimpton Hotel Monaco – Chicago, IL
- Kimpton Hotel Monaco – Philadelphia, PA
- Le Méridien Philadelphia – Philadelphia, PA
- Library Hotel – New York, NY
- Loews Philadelphia Hotel – Philadelphia, PA
- Marriott Downtown – Philadelphia, PA
- Marriott Old City – Philadelphia, PA
- Moxy East Village – New York, NY
- Moxy Times Square – New York, NY
- NOLA Marriott Warehouse Arts – New Orleans, LA
- The Ritz-Carlton – Philadelphia, PA
- Sheraton Philadelphia Downtown – Philadelphia, PA
- Society Hill Hotel at Independence Park – Philadelphia, PA
- Sonesta Philadelphia Rittenhouse Square – Philadelphia, PA
- The Standard – New York, NY
- Waldorf Astoria Chicago – Chicago, IL
- The Windsor Suites – Philadelphia, PA
- Wyndham Philadelphia Historic District – Philadelphia, PA

61.     The scheme is that Venue Butler's button funnels unsuspecting customers into taxi rides governed by the terms of the Curb App, which upon information and belief charges its riders a service fee.

62.     The scheme injures consumers because riders are never shown the service fee and are never provided the opportunity to reject or consent to the service fee, and the Defendants never disclose the service fee to the riders.

63.     As a direct and factual result of Defendants' scheme, Plaintiff and the class he represents have had money wrongfully taken from them.

64.     When a consumer swipes a payment card, he or she has agreed to pay the amount disclosed only.  In this scheme, the service fee is hidden, and the unsuspecting rider has never seen or agreed to pay the hidden fee.

65.     Because of Defendants' actions, Plaintiff and other similarly situated individuals have been cheated out of their hard-earned money. By their actions, Defendants have committed conversion, have been unjustly enriched, and have violated the Pennsylvania UTPCPL, and other similar statutes nationwide.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of himself and as a representative of the following Class:

**Nationwide Class:**

> All persons nationwide who used a payment card to purchase a taxi ride initiated by pressing the Venue Butler button and were charged an undisclosed service fee by Defendants.

**Pennsylvania Sub-Class:**

> All persons in Pennsylvania who used a payment card to purchase a taxi ride initiated by pressing the Venue Butler button and were charged an undisclosed service fee by Defendants.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of Defendants, the legal representatives, heirs,

successors, and assigns of Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

59.     Plaintiff's Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

60.     The persons who fall within the Class number at least in the thousands, satisfying the numerosity requirement.  Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable.

61.     There are questions of fact and law common to the Class that predominate over any questions affecting only individual members.  The questions of fact and law common to the Class arising from Defendants' actions include, without limitation, the following:

    a.     Whether Defendants charged a service fee on taxi rides taken by Plaintiff and putative Class members;

    b.     Whether Defendants failed to disclose the service fee to Plaintiff and putative Class members;

    c.     Whether Defendants ever gave Plaintiff or any putative class member the opportunity to reject or give consent to paying a service fee in connection with taxi rides initiated by pressing the Venue Butler button;

    d.     Whether Defendants were unjustly enriched; and,

    e.     Whether the Class is entitled to damages, restitution, and/or other relief as a remedy for Defendants' misconduct.

62.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

63.     Plaintiff's claims are typical of those of the Class in that each Class member requested a taxi ride that was summoned by pressing the Venue Butler button, and each was charged an undisclosed service fee by Defendants.

64.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Class.  The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

65.     Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of those he seeks to represent.  The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex class litigation.

66.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts, which could result in inconsistent adjudications while a single class action can determine, with judicial economy, the rights of all Class members.

## COUNT I: VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND OTHER SIMILAR STATUTES NATIONWIDE

67.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

68.     Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact and omissions concerning the cost, nature and quality of taxi ride hailing services for the sole purpose of inducing justifiable reliance by Plaintiff and members of the Class in paying service fees, when Defendants knew that these representations and omissions were false, fraudulent and misleading. Defendants therefore have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. §§ 201-1, *et seq.*, and other similar state statutes nationwide.

69.     Plaintiff and members of the classes have suffered ascertainable losses of money, in the form of undisclosed service fees on Defendants' taxi ride hailing service, as a result of various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

    a.     Representing that the taxi rides have provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, they did not have;

    b.     Advertising or marketing the taxi ride service with the intent to charge a service fee not disclosed to consumers;

    c.     Failing to comply with the terms of guarantees and/or warranties given to Plaintiffs prior to, at the time of, and after, Plaintiff's payment for service; and,

    d.     Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

70.     Plaintiff and members of the Classes justifiably relied upon the material misrepresentations made by Defendants concerning the cost, nature and quality of their taxi ride hailing services and, as a result of such reliance, suffered those damages and losses set forth above.

71.     Specifically, this service fee charged to riders has not been authorized by the Philadelphia Parking Authority (the PPA), which regulates taxi rides like these.

72.     As such, by charging the service fees at issue without the disclosure or consent of riders, and without specific authorization to do so by the PPA, results in a violation of the law.

73.     53 Pa.C.S. § 5703(a) requires that **"[e]very rate made for authority-certified taxicab, limousine or medallion taxicab service shall be just and reasonable and in conformity with regulations or orders of the authority."** The taxis at issue are authority-certified taxis regulated by the PPA. The rates made and charged for the rides at issue are not just and reasonable because they have not been fairly or properly disclosed to riders. Further, rates made and charged for the rides at issue are not in conformity with regulations or orders of the authority because the PPA has not authorized service fees like the ones at issue for these riders. Defendants have violated 53 Pa.C.S. § 5703(a).

74.     Further, 53 Pa.C.S. § 5703(d) provides that **"[n]o taxicab or limousine service shall, directly or indirectly, by any device whatsoever or in any way, demand or receive from any person, corporation or municipal corporation a greater or lesser rate for any service rendered or to be rendered by the taxicab or limousine service than that specified in the tariffs of the taxicab or limousine service."** The rates demanded or received at issue have not been approved by the PPA.  The service fee charged is a greater rate than permitted, and has been procured through the Venue Butler button and Curb "devices" as set forth herein. Defendants have violated 53 Pa.C.S. § 5703(d).

75.     Defendants' violation of 53 Pa.C.S. § 5703(a) and (d), and other similar local and regional taxi requirements, are further proof that Defendants have violated the Pennsylvania Unfair

Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. §§ 201-1, *et seq.*, and other similar state statutes nationwide.

WHEREFORE, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT II: UNJUST ENRICHMENT

76.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

77.     To the extent this count is inconsistent with any of the others, it is pled in the alternative.

78.     Defendants knowingly charged and retained service fees from Plaintiff and putative Class members. The Defendants never disclosed the service fees to Plaintiff and putative class members, and Defendants never gave Plaintiff and class members the opportunity to reject or consent to paying the service fees. The service fees were wrongfully charged by Defendants on taxi rides initiated by pressing the Venue Butler button.

79.     Plaintiff and putative Class members had a reasonable expectation that they would not have money wrongfully taken from their credit or debit card accounts.

80.     Upon information and belief, both Curb Mobility and Venue Butler directly each received the money representing the service fees charged to the riders, or a portion thereof, and were unjustly enriched as a result of the transactions at issue.

81.     Under the circumstances, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and members of the putative Class.

16

82.     As a direct and proximate result of Defendants' actions, Defendants have been unjustly enriched.  Plaintiff and other members of the putative Class have a right to restitution in an amount to be proven at trial.

WHEREFORE, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

### COUNT III: CONVERSION

83.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

84.     To the extent this count is inconsistent with any of the others, it is pled in the alternative.

85.     Plaintiff and the Class had a property interest in the money that Defendants wrongfully charged as a service fee on taxi rides summoned by pressing the Venue Butler button. The money belonged to Plaintiff and the Class at all times prior to the taxi rides at issue.

86.     Defendants misappropriated specific and identifiable funds belonging to Plaintiff and the Class when Defendants surreptitiously charged a service fee, without authorization or consent, and diverted those funds for their own use.  Defendants had no legal justification for their actions.

87.     In so doing, Defendants have exerted ownership and dominion over Plaintiff and putative Class members' personal property in denial of Plaintiff and putative Class members' rights.

88.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have been damaged.

89.     The amount that Defendants took from Plaintiff and the Class is capable of determination, to an identified sum, by reviewing the service fee amount in the Curb system on taxi receipts from rides initiated by pressing the Venue Butler button.

90.     Upon information and belief, both Curb Mobility and Venue Butler directly each received the money representing the service fees charged to the riders, or a portion thereof, and profited as a result of the conversion of funds.

91.     On behalf of himself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by Defendants' conduct.

92.     Defendants intended to cause damage to Plaintiff and the Class by converting undisclosed service fees for Defendants' own profit. Defendants' conduct was, therefore, malicious, and Defendants are also guilty of oppression in that their systematic acts of conversion subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages.

WHEREFORE, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT IV: DECLARATORY RELIEF

93.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

94.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*,

No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

95.     An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties.

96.     Specifically, Plaintiff contends, and presumably Defendants dispute and deny, the following:

        a)      Defendants were not permitted to charge the service fee;

        b)      The service fee was not disclosed;

        c)      The Plaintiff and class did not consent to the service fees;

        d)      The Plaintiff and class were not provided the opportunity to reject the service fees; and,

        e)      Defendants are not entitled to retain the service fees.

97.     Resolution of the duties, responsibilities and obligations of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

98.     Plaintiff seeks a Declaratory Judgement to determine a) through e) above.

WHEREFORE, Plaintiff and the Classes demand declaratory judgment against Defendants that the service fee was wrongfully charged and that Plaintiff and the class are entitled to restitution.

## **PRAYER FOR RELIEF**

The following relief is requested by Plaintiff and members of the Classes:

        a.      Certification of this case as a class action;

b. Appointment of Plaintiff as representative of the Classes and the undersigned as Class Counsel;

c. Preliminarily and thereafter permanently enjoining the Defendants from engaging in the acts described herein;

d. Compensatory damages to Plaintiff in the amount of money due as a result of Defendants wrongfully charging undisclosed service fees, and such compensatory damages to each member of the Classes in an amount to be determined, including interest on said amounts for Plaintiff and members of the Classes;

e. Restitution damages pursuant to common law;

f. For a declaration that that Defendants failed to disclose the service fees, that Defendants never gave Plaintiff and the class the opportunity to consent to the service fees, that Defendants wrongfully charged the service fees, and for such other declaratory relief as the Court may deem proper;

g. an order requiring that Defendants disgorge all funds wrongfully withheld from Plaintiff and the Classes;

h. punitive, treble and/or multiple damages;

i. litigation costs and counsel fees;

j. administrative costs and expenses incurred in the class certification process; and

k. such additional relief as the Court may deem necessary and proper.

### JURY TRIAL DEMANDED

Plaintiffs herein demand a trial by jury of all issues triable.

Respectfully submitted,

Dated:   November 16, 2022

Kenneth J. Grunfeld
Richard Golomb
Kevin W. Fay
**GOLOMB SPIRT GRUNFELD PC**
1835 Market Street
Suite 2900
Philadelphia, Pa. 19103
215 985-9177
Email: rgolomb@GolombLegal.Com
          KGrunfeld@GolombLegal.Com
          kfay@golomblegal.com

David L. Woloshin
Dina S. Ronsayro
Jordan Schlossberg
Jonathan Zakheim
**ASTOR WEISS KAPLAN & MANDEL, LLP**
200 South Broad Street
Suite 600
Philadelphia, PA 19102
Phone: (215) 790-0100 | Fax: (215) 790-0509
*E-Mail*: DWoloshin@astorweiss.com
          DRonsayro@astorweiss.com
          JSchlossberg@astorweiss.com
          JZakheim@astorweiss.com

*Attorneys for Plaintiff and the Classes*