## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL M. ZAKHEIM and ARIELA ROSS, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) ) | **Case No. 2:22-cv-04594-GAM** |
| **Plaintiffs,** | ) ) | **DEMAND FOR JURY TRIAL** |
| **vs.** | ) ) | |
| **CURB MOBILITY, LLC, TAXI BUTLER B.V. d/b/a VENUE BUTLER, and YAIKS, INC.** | ) ) ) | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| **Defendants.** | ) ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Samuel M. Zakheim and Ariela Ross ("Plaintiffs"), individually and on behalf of all others similarly situated, file this First Amended Class Action Complaint against Defendants Curb Mobility, LLC ("Curb Mobility"), Yaiks, Inc. ("Yaiks"), and Taxi Butler B.V. d/b/a Venue Butler ("Venue Butler" and together with Curb Mobility and Yaiks, the "Defendants"). In support thereof, Plaintiffs state and allege as follows:

## INTRODUCTION

1.      Almost every taxi in Philadelphia, New York, Los Angeles, Chicago, Washington D.C., and Fort Lauderdale uses software from a company known as Curb Mobility. Curb Mobility's software is integrated into every taxi meter as a conduit for processing payment cards, and it also calculates the fares riders are charged while operating as a taxi-hailing mobile application that uses the following logo: 

2.      The case is about how Plaintiffs Samuel Zakheim and Ariela Ross and others like them are getting ripped off by Defendants through secretly charged, undisclosed service fees. Plaintiff Zakheim's experience is particularly illustrative.

1

3.     On August 18, 2022, Plaintiff Zakheim went to the lobby of his hotel on Broad Street in downtown Center City, Philadelphia, and asked the clerk to call him a taxi.

4.     The clerk pressed a button on a yellow device nearby.

5.     The yellow device is actually taxi-hailing hardware marketed by co-Defendant Venue Butler as a free service to hotels, bars, restaurants, and other venues.  It looks like this:



6.     Defendant Venue Butler's marketing says: "One press of a button and a taxi is on its way to pick up your guests."

7.     That is what happened to Plaintiff Zakheim. He waited near the front entrance of the hotel until a taxi came and picked him up.

8.     At no time did anybody mention the existence of any service fee to Plaintiff Zakheim, nor were any service fees displayed on the screen inside the taxi.

9.     As far as Plaintiff Zakheim was concerned, he was simply hailing a cab in the traditional manner by asking a hotel employee to call him a taxi.

10.    The Curb logo  and name of Defendant Curb Mobility appeared on the display of the screen inside the taxi; the name of Defendant "Venue Butler" appeared nowhere on the screen.

11.    When Plaintiff Zakheim arrived at his destination, the fare on the screen was $6.80, and he elected to tip $2.00, making a grand total of $8.80 due and owing. He paid by credit card using the merchant processing machine connected to the screen inside the taxi.

12.    At all times, the amounts on the screen of the merchant processing machine inside the taxi matched the amounts listed in paragraph 11 above.

13.    After the transaction was complete, Plaintiff Zakheim requested a paper copy of his receipt, which reflected an undisclosed service fee of $2.50 and a grand total charge of $11.30.

14.    Here is a picture of Plaintiff Zakheim's paper receipt (with zoom-in on the $2.50 service fee), that the taxi driver handed to him as he was getting out of the cab on August 18, 2022:



15.     Plaintiff Zakheim was shocked to see that he had been charged $11.30—two dollars and fifty cents more than the amount that was disclosed to him on screen in the taxi. He was shocked again to check his credit card statement and confirm the overcharged total of $11.30.

16.     Upon information and belief, Defendant Curb Mobility exercises authority and control of taxi meters, the screens inside the taxis and the merchant processing machines inside taxi cabs in Philadelphia and other big cities in the United States.[1]

17.     When taxi rides are initiated by pressing the button on Defendant Venue Butler's device, Defendants on the back end charge a hidden service fee to Plaintiffs and class members who are completely blindsided by it.

---

[1]    *See*   https://www.entrepreneur.com/leadership/how-curb-mobility-brought-taxi-rides-into-the-21st-century/425386 (last visited November 11, 2022).

4

18.     Plaintiffs and class members are never given notice of the service fee and are never given the opportunity to consent to being charged the service fee for taxi rides that originate from pressing the Venue Butler button. Nor have they ever consented to such a fee.

19.     This class action is about the hidden fee that Defendants charged Plaintiffs without their knowledge and consent. Defendants continue to illegally charge fees to consumers and class members who order taxi rides summoned by pressing the Venue Butler button.

20.     Plaintiffs Samuel M. Zakheim and Ariela Ross seek to represent a class of riders who were illegally charged a service fee that was never disclosed to them and that they never consented to, on taxi rides that originate from pressing the Venue Butler button.

21.     As a result of Defendants' fraudulent scheme, Plaintiffs got slammed with a service fee of $2.50. According to Venue Butler's website, the company is "loved by 25,000+ hotels, bars, and restaurants around the world" and it has partnerships with Marriott, Hilton, Hyatt, Radisson, IHG, and other major hotel chains.[2]

22.     Upon information and belief, in addition to Philadelphia and New York, Defendants are using unfair and deceptive business practices and charging undisclosed fees in other cities, including Chicago, Washington, D.C., and others.

23.     Because this is happening to thousands of other consumers in cities across the country, Plaintiffs bring this action to recoup their losses and those of putative Class members against Defendants. Accordingly, Plaintiffs assert common law claims for conversion, fraud, and unjust enrichment and Plaintiffs also seek redress for violation of various statutes including the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), *et seq.* ("RICO"), Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et*

---

[2] https://www.venuebutler.com/ (last visited November 10, 2022).

*seq.* ("UTPCPL"), and New York's consumer protection and false advertising statutes, N.Y. Gen. Bus. Law §§ 349, 350 ("NY CPL"), as well as other similar statutes nationwide.

## PARTIES

24.     Plaintiff Samuel M. Zakheim is an individual resident of Philadelphia County in the Commonwealth of Pennsylvania.

25.     Plaintiff Ariela Ross is an individual resident of New York, NY residing on the Upper West Side of Manhattan.

26.     Defendant Curb Mobility LLC is a Delaware limited liability company with a principal place of business at 11-11 34th Avenue, Long Island City, NY 10011. Upon information and belief, none of the members of Curb Mobility LLC are citizens of Pennsylvania.

27.     Defendant Taxi Butler B.V. d/b/a Venue Butler is a Dutch company with a principal place of business at Keizersgracht 169, 1016 DP Amsterdam, Netherlands.

28.     Defendant Yaiks, Inc. is a Delaware corporation with a principal place of business at 2382 Kimridge Road, Beverly Hills, CA 90210.

29.     Upon information and belief, at all times relevant hereto, Defendant Taxi Butler B.V. and Defendant Yaiks, Inc. owned and were doing business as Venue Butler. Hereinafter, "Defendant Venue Butler" shall refer to Defendants Taxi Butler B.V. and Yaiks, Inc. doing business together as Venue Butler.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over Plaintiffs' RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

31.     This Court also has original jurisdiction under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the

aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendants.

32.     The Court has personal jurisdiction over Defendants because at all relevant times Defendants have transacted, solicited, and conducted business in Pennsylvania through employees, agents, and/or sales representatives and derived substantial revenue from business in Pennsylvania.

33.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in the Eastern District of Pennsylvania and specifically in the City of Philadelphia, because Plaintiff Zakheim resides in this district and one of the transactions at issue occurred in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## INDIVIDUAL PLAINTIFFS' FACTS

### *Plaintiff Zakheim*

34.     As stated above, Plaintiff Zakheim was charged an undisclosed $2.50 fee when he took a taxi ride from a hotel on August 18, 2022.

35.     When Plaintiff Zakheim asked the clerk at the hotel to call him a taxi, there was no notice whatsoever to Plaintiff Zakheim that a service fee would be charged for the upcoming taxi ride.

36.     While Plaintiff Zakheim was at the hotel and waiting just outside for his taxi, there was no sign or notice forewarning him that his taxi ride was subject to a service fee of $2.50.

37.     Inside the taxi, Plaintiff Zakheim noticed a Verifone merchant processing machine with a screen that advertised Defendant Curb Mobility's corporate logo, similar to the picture below:



38.     The screen inside the taxi did not disclose the existence of a service fee connected to Plaintiff Zakheim's ride.

39.     The total fare for Plaintiff Zakheim's ride was $6.80, and he tipped $2.00 for a grand total of $8.80.

40.     Plaintiff Zakheim used the merchant processing machine inside the taxi to pay by debit card.

41.     He agreed to pay $8.80.

42.     After the transaction was complete, Plaintiff Zakheim requested a paper copy of his receipt, a true and correct copy of which is shown above at paragraph 14.

43.     The total amount on Plaintiff Zakheim's paper receipt did not match the total amount of $8.80 that was depicted on the screen of the merchant processing machine inside the taxi.

44.     Plaintiff Zakheim's receipt showed a service fee of $2.50 and a grand total charge of $11.30.

45.    Plaintiff Zakheim was charged a service fee of $2.50 without his knowledge or consent.

46.    If Plaintiff Zakheim had known that he would be charged a service fee of $2.50, he would not have agreed to accept a ride in the taxi that was summoned via Defendant Venue Butler's device, but would have instructed the front desk clerk or valet to hail him a taxi by phone or manually, or would have done so himself.

47.    Plaintiff Zakheim was never given notice of the service fee and he never got the opportunity to reject or consent to the service fee.

*Plaintiff Ross*

48.    Plaintiff Ross was charged an undisclosed $2.50 fee when she took a taxi ride on or around November 8, 2022, from her apartment building located at 220 Riverside Boulevard, New York, New York.

49.    That morning, Plaintiff Ross left her Upper West Side apartment for Midtown, a trip Plaintiff Ross had taken countless times in the past without incurring any service fees or undisclosed charges.

50.    Upon entering her building lobby, in accordance with routine, the front desk clerk greeted Plaintiff Ross and inquired if she wanted a taxi, to which Plaintiff Ross responded in the affirmative and then turned to say hello to another resident.

51.    With over 400 individual units and a prominent location at the intersection of Riverside Boulevard and 70th Street, which are major thoroughfares, 220 Riverside typically attracts a line of taxis outside its front door, and minimal time or effort is required of building residents to secure a ride, even during rush hour.

52.     The neighborhood surrounding 220 Riverside is widely known as an ideal spot to spontaneously hail a cab, in part due to the popularity of a local house of worship nearby where taxis routinely double- and triple- park multiple times per day.

53.     However, on the day in question, and unbeknownst to Plaintiff Ross, the front desk clerk summoned a taxi by pressing the button on Defendant Venue Butler's device rather than instructing a valet to hail a taxi manually or by phone, as in the past, although there was no notice to Plaintiff Ross that a service fee would be charged for her ride.

54.     Plaintiff Ross then proceeded through the front door of the building, where there was no sign or notice forewarning her that the taxi ride was subject to a service fee of $2.50.

55.     Inside the taxi, Plaintiff Ross noticed a screen that advertised Defendant Curb Mobility's corporate logo, which did not disclose a service fee connected to Plaintiff Ross's ride at the outset or at any time during the trip.

56.     When Plaintiff Ross arrived at her destination and was advised by the taxi driver that the total fare was approximately $17.50, Plaintiff Ross immediately realized that the fare was substantially higher than the usual cost of around $15.00, and demanded an explanation.

57.     It was only then, at the time payment was demanded, that Plaintiff Ross was informed by the taxi driver that a service fee had been added to the fare via Defendant Venue Butler's device, which service fee the driver claimed he could not reverse, refund, or otherwise remove from Plaintiff Ross's fare.

58.     Additionally, although unbeknownst to Plaintiff Ross at the time, subsequent investigation demonstrated that a $2.50 line item for an "E Hail fee" is displayed in the fare breakdown on Defendant Curb Mobility's screens only at the conclusion of a ride initiated via Defendant Venue Butler's system.

59.     Deprived of any alternative other than fare evasion, Plaintiff Ross paid the total demanded by the driver in cash, including the $2.50 service fee, which was added to Plaintiff Ross's fare without her knowledge or consent.

60.     If Plaintiff Ross had known that she would be charged a service fee of $2.50, she would not have agreed to accept a ride in the taxi that was summoned via Defendant Venue Butler's device, but would have instructed the front desk clerk or valet to hail her a taxi by phone or manually, or would have done so herself.

61.     Plaintiff Ross was never given notice of the service fee, nor any opportunity to reject or consent to the service fee.

## DEFENDANTS' SCHEME

### A. *Background on Merchant Processing in Taxis and Curb Mobility's Growth*

62.     Taxis were traditionally a cash-only business.

63.     Starting about two decades ago, taxis in Philadelphia and New York were outfitted with mobile credit card payment systems. This revolutionized the industry.

64.     During this time, the biggest player in the business of merchant processing of point-of-sale transactions in taxis was TaxiTronic, which then partnered with Verifone, Inc. to form Verifone Transportation Systems, Inc. ("VTS").

65.     VTS expanded to markets throughout the U.S. and introduced new innovations such as Taxi TV, a digital screen inside the taxi that created an additional revenue source through ad placement.

66.     By the next decade, licensed taxis faced increased competition from the emerging rideshare industry represented by mobile applications like Uber and Lyft.

67.     As the popularity of ride-hailing apps exploded in 2012 and 2013, taxi fleets could not compete without adapting to the changing times and adopting comparable technology.

68.     In 2016, VTS launched its mobile taxi application, known as the "Curb App."

69.     VTS marketed the Curb App as a universal application that could be used to call a licensed taxi or livery vehicle.

70.     In or about 2018, VTS was purchased by Defendant Curb Mobility.

71.     Upon information and belief, through its acquisition of VTS, Defendant Curb Mobility took over authority and control of merchant processing of point-of-sale transactions inside taxis throughout the U.S. Among other things, this acquisition allowed Curb Mobility access to the meters inside every taxi.

72.     Upon information and belief, Defendant Curb Mobility charges a service fee to users of the Curb App who summon taxis using the Curb App. If the Curb App is not used to summon or pay for a particular taxi ride, the user has not agreed to pay a service fee and is not charged such a fee.

**B.  *Venue Butler's Partnership with Curb to Surreptitiously Overcharge Customers***

73.     The contraption distributed by Defendant Venue Butler is a taxi booking device—literally a button on a piece of hardware —for venues like hotels, bars, and restaurants. A picture of the Venue Butler button is depicted above at paragraph 5.

74.     Upon information and belief, when the Venue Butler button is pressed, it triggers an electronic request across the wires in Defendant Curb Mobility's network for a taxi to pick-up the customer at the desired location.

75.     Defendant Venue Butler markets itself as a free service to hotels and other venues, and does not solicit business directly from riders.

12

76.     Defendant Venue Buter has introduced its button to tens of thousands of venues around the world, including, for example, more than fifty venues in Washington, D.C. alone.[3]

77.     The Venue Butler button can also be found in at least the following venues in Philadelphia, New York, Chicago, New Orleans, and Asheville:

- AC Hotel Asheville Downtown – Asheville, NC
- ACME Hotel Company Chicago – Chicago, IL
- AKA Hotels+Hotel Residences – Philadelphia, PA
- The Bowery Hotel – New York, NY
- Broadway Plaza Hotel – New York, NY
- Cambria Hotel Philadelphia Downtown Center City – Philadelphia, PA
- Canopy by Hilton – Philadelphia, PA
- Dylan Hotel NYC – New York, NY
- Equinox Hotel – New York, NY
- Four Seasons Hotel – Philadelphia, PA
- Hilton Garden Inn Philadelphia Center City – Philadelphia, PA
- Hilton Midtown Cluster (multiple locations) – New York, NY
- Holiday Inn Express Midtown – Philadelphia, PA
- Holiday Inn Express Penns Landing – Philadelphia, PA
- Hotel 48LEX – New York, NY
- Hotel Belleclaire – New York, NY
- Hotel Le Soleil – New York, NY
- Hotel On Rivington – New York, NY
- Hotel Saint Vincent – New Orleans, LA
- INNSiDE by Meliá – New York, NY
- Kimpton Hotel Monaco – Chicago, IL
- Kimpton Hotel Monaco – Philadelphia, PA
- Le Méridien Philadelphia – Philadelphia, PA
- Library Hotel – New York, NY
- Loews Philadelphia Hotel – Philadelphia, PA
- Marriott Downtown – Philadelphia, PA
- Marriott Old City – Philadelphia, PA
- Moxy East Village – New York, NY
- Moxy Times Square – New York, NY
- NOLA Marriott Warehouse Arts – New Orleans, LA
- The Ritz-Carlton – Philadelphia, PA
- Sheraton Philadelphia Downtown – Philadelphia, PA
- Society Hill Hotel at Independence Park – Philadelphia, PA
- Sonesta Philadelphia Rittenhouse Square – Philadelphia, PA

---

[3] *See* https://dcyellowcab.com/taxi-butler/ (last visited November 11, 2022).

- The Standard – New York, NY
- Waldorf Astoria Chicago – Chicago, IL
- The Windsor Suites – Philadelphia, PA
- Wyndham Philadelphia Historic District – Philadelphia, PA

78.     The scheme is that Venue Butler's button passes electronic messages along a wire system to funnel unsuspecting customers into taxi rides governed by the terms of the Curb App, which upon information and belief charges its riders a service fee.

79.     The scheme injures consumers because riders are never shown the service fee and are never provided the opportunity to reject or consent to the service fee, and the Defendants either never disclose the service fee to the riders, or belatedly disclose it when the passenger's only option to avoid the fee is fare evasion.

80.     As a direct and factual result of Defendants' wire fraud scheme, Plaintiffs and the classes they represent have had money wrongfully taken from them, via electronic payments and via cash.

81.     When a consumer swipes a payment card, he or she has agreed to pay the amount disclosed only.  In this scheme, the service fee is hidden, and the unsuspecting rider has never seen or agreed to pay the hidden fee, or the service fee is belatedly disclosed when the rider's only option to avoid the fee is fare evasion.

82.     Because of Defendants' actions, Plaintiffs and other similarly situated individuals have been cheated out of their hard-earned money. By their actions, Defendants have committed conversion and fraud, have been unjustly enriched, have violated RICO, and the Pennsylvania UTPCPL and the NY CPL, as well as other similar statutes nationwide.

## CLASS ACTION ALLEGATIONS

83.     Plaintiffs Zakheim and Ross bring this case as a class action under FED. R. CIV. P. 23, on behalf of themselves and as representatives of the following Classes and Sub-classes:

**Nationwide Class:**

> All persons nationwide who paid for a taxi ride initiated by pressing the Venue Butler button and were charged an undisclosed service fee by Defendants.

**Pennsylvania Sub-Class (Plaintiff Zakheim):**

> All persons in Pennsylvania who paid for a taxi ride initiated by pressing the Venue Butler button and were charged an undisclosed service fee by Defendants.

**New York Sub-Class (Plaintiff Ross):**

> All persons in New York who paid for a taxi ride initiated by pressing the Venue Butler button and were charged an undisclosed service fee by Defendants.

Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

59.     Plaintiffs' Classes and Sub-classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

60.     The persons who fall within the Classes and Sub-classes number at least in the thousands, satisfying the numerosity requirement.  Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable.

61.     There are questions of fact and law common to the Classes and Sub-classes that predominate over any questions affecting only individual members.  The questions of fact and law common to the Class arising from Defendants' actions include, without limitation, the following:

a.     Whether Defendants charged a service fee on taxi rides taken by Plaintiffs and putative Class members;

b.      Whether Defendants failed to disclose the service fee to Plaintiffs and putative Class members;

c.      Whether Defendants ever gave Plaintiffs or any putative class member the opportunity to reject or give consent to paying a service fee in connection with taxi rides initiated by pressing the Venue Butler button;

d.      Whether Defendants were unjustly enriched; and,

e.      Whether the Classes are entitled to damages, restitution, and/or other relief as a remedy for Defendants' misconduct.

62.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

63.     Plaintiffs' claims are typical of those of the Class in that each Class member requested a taxi ride that was summoned by pressing the Venue Butler button, and each was charged an undisclosed service fee by Defendants.

64.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Classes.  The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

65.     Plaintiffs are adequate representatives of the Classes and Sub-classes because they are members of their respective Classes and Sub-classes and their interests do not conflict with the interests of those they seek to represent.  The interests of the Class members will be fairly and

adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex class litigation.

66.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts, which could result in inconsistent adjudications while a single class action can determine, with judicial economy, the rights of all Class members.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND OTHER SIMILAR STATUTES NATIONWIDE

67.     Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

68.     Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact and omissions concerning the cost, nature and quality of taxi ride hailing services for the sole purpose of inducing justifiable reliance by Plaintiffs and members of the Classes in paying service fees, when Defendants knew that these representations and omissions were false, fraudulent and misleading. Defendants therefore have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. §§ 201-1, *et seq.*, and other similar state statutes nationwide.

69.     Plaintiffs and members of the classes have suffered ascertainable losses of money, in the form of undisclosed service fees on Defendants' taxi ride hailing service, as a result of

various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

        a.      Representing that the taxi rides have provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, they did not have;

        b.      Advertising or marketing the taxi ride service with the intent to charge a service fee not disclosed to consumers;

        c.      Failing to comply with the terms of guarantees and/or warranties given to Plaintiffs prior to, at the time of, and after, Plaintiffs' payment for service; and,

        d.      Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

70.    Plaintiffs and members of the Classes justifiably relied upon the material misrepresentations made by Defendants concerning the cost, nature and quality of their taxi ride hailing services and, as a result of such reliance, suffered those damages and losses set forth above.

71.    Specifically, this service fee charged to riders has not been authorized by the Philadelphia Parking Authority (the PPA), which regulates taxi rides like these.

72.    As such, by charging the service fees at issue without the disclosure or consent of riders, and without specific authorization to do so by the PPA, results in a violation of the law.

73.    53 Pa.C.S. § 5703(a) requires that **"[e]very rate made for authority-certified taxicab, limousine or medallion taxicab service shall be just and reasonable and in conformity with regulations or orders of the authority."** The taxis at issue are authority-certified taxis regulated by the PPA. The rates made and charged for the rides at issue are not just and reasonable because they have not been fairly or properly disclosed to riders. Further, rates made and charged for the rides at issue are not in conformity with regulations or orders of the

authority because the PPA has not authorized service fees like the ones at issue for these riders. Defendants have violated 53 Pa.C.S. § 5703(a).

74.    Further, 53 Pa.C.S. § 5703(d) provides that **"[n]o taxicab or limousine service shall, directly or indirectly, by any device whatsoever or in any way, demand or receive from any person, corporation or municipal corporation a greater or lesser rate for any service rendered or to be rendered by the taxicab or limousine service than that specified in the tariffs of the taxicab or limousine service."** The rates demanded or received at issue have not been approved by the PPA.  The service fee charged is a greater rate than permitted, and has been procured through the Venue Butler button and Curb "devices" as set forth herein. Defendants have violated 53 Pa.C.S. § 5703(d).

75.    Sub-sections 5703(a) and 5703(d) are applicable to Plaintiff Zakheim's August 18, 2022 transaction because, *inter alia*, the taxi-cab was "hailed" in the traditional manner, i.e., by asking a hotel employee, because there was no payment restriction such that Plaintiff Zakheim had the option to pay in cash or by card, and because passengers are strangers not in contractual privity with the taxi-cab or the driver.

76.    Chapter 57A of the Pennsylvania Code, entitled "Transportation Network Companies" governs transportation network services. To the extent applicable, Defendants also violated this chapter by, *inter alia*, failing to obtain the required licenses, failing to provide the disclosures required by 53 Pa.C.S. §§ 57A17(a) & 57A17(d), and/or failing to keep records in accordance with 53 Pa.C.S. § 57A18.

77.    Defendants' violation of 53 Pa.C.S. §§ 5703(a) & (d), and 57A17(a) & (d), and other similar local and regional taxi requirements, are further proof that Defendants have violated

the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. §§ 201-1, *et seq.*, and other similar state statutes nationwide.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT II: VIOLATION OF NEW YORK GENERAL BUSINESS LAWS §§ 349, 350

78.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

79.    Plaintiffs bring this claim individually and on behalf of the other members of the New York Sub-class.

80.    Plaintiff Ross has standing to bring this claim individually and on behalf of the other class members because the underlying transaction at issue between Plaintiff Ross and Defendants happened entirely, or predominantly, in New York. Plaintiff Ross was situated in New York when she took the taxi ride on November 8, 2022. The representations and omissions at issue were directed towards Plaintiff Ross in New York, and, in exchange for payment from Plaintiff Ross, Defendants purported to provide services to Plaintiff Ross in New York.

81.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

82.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade, or commerce[.]" False advertising includes "advertising including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light . . . representations [made] with respect to the commodity. . . ." N.Y. Gen. Bus. Law § 350-a.

20

83.     Defendants engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Laws §§ 349 & 350, by charging and collecting a hidden fee without consumers' consent.

84.     Defendants knew or should have known that disclosure of the hidden fee was material and important to Plaintiffs, class members, and reasonable consumers who were making choices about whether or how to hail a taxi-cab.

85.     Defendants knew or should have known that the fee was hidden. Defendants were responsible for making sure the fee was disclosed so that consumers are given the option to provide affirmative consent.

86.     Defendants have exclusive knowledge of material facts not known to Plaintiffs and other reasonable consumers: that Defendants are charging a hidden fee when taxi rides are initiated by pressing the Venue Butler button. Defendants actively conceal this fact by marketing the Venue Butler button to venues and taxi dispatchers as a free convenience to consumers. Defendants' scheme is intended to train hotel employees to press the button, and to count on taxi drivers to collect money, all the while nobody is giving any disclosures to consumers about fees.

87.     Despite knowing that the fee was hidden, Defendants continued to operate their business with hidden fees.

88.     Defendant's representations and omissions were material because they were likely to, and did, deceive reasonable consumers about the existence of the hidden fee.

89.     Defendants acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiffs' and the other class members' rights.

90.     Specifically, New York's Taxi and Limousine regulations provide the following:

> The E-Hail App Provider must provide Passengers and/or Drivers
> with reasonable notice of all Passenger and Driver fees and rates

> charged by the E-Hail App Provider for use of the E-Hail App, as
> applicable, including but not limited to any variable or surge pricing
> policies applicable to the fees charged by the E-Hail App Provider,
> cancellation fees, and no-show fees, prior to Drivers' or Passengers'
> use of the E-Hail App for request of a trip.

*See* 35 R.C.N.Y. § 78-15(c).

91.     By their conduct, Defendants violated 35 R.C.N.Y. § 78-15(c) and other similar local and regional taxi requirements, which is further proof that Defendants have violated the NY CPL and other similar state statutes nationwide.

92.     As a direct and proximate result of Defendants' deceptive and unlawful acts and practices, Plaintiffs and the other class members suffered injury. Defendants deprived Plaintiffs and the other class members of the benefit of the bargain. Plaintiffs and the other class members have suffered injury, ascertainable losses of money, and monetary and non-monetary damages because Plaintiffs and the other class members overpaid for taxi rides initiated by pressing the Venue Butler button.

93.     Defendants' deceptive and unlawful acts and practices complained of herein affected all purchasers of all taxi rides initiated by pressing the Venue Butler button. The above deceptive and unlawful practices and acts by Defendants caused substantial injury to Plaintiffs and the other class members that they could not reasonably avoid. Plaintiffs and the other class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 per violation (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

94.     Each time Defendants accepted a payment from Plaintiffs and/or one or more of the other class members for a taxi ride initiated by pressing the Venue Butler button., Defendants

committed a separate, independent, and willful violation of N.Y. Gen. Bus. Laws §§ 349 & 350 through the above deceptive acts and practices in the conduct of its business.

95.     Defendants should, therefore, be assessed a separate statutory penalty of $50 for each independent violation, and all other such relief as may be just and proper should be recovered by Plaintiffs individually and on behalf of the other class members.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT III: VIOLATION OF 18 U.S.C. § 1962(c)

96.     Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

97.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Defendants violated this provision of 18 U.S.C. § 1962.

98.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). The hotels and taxi dispatch companies that Defendants utilize as "partners" in their scheme are legal entities that together form an association-in-fact enterprise joined for the purpose of selling taxi ride hailing services with hidden fees. The hotels and/or taxi dispatch companies qualify as an "enterprise."

99.     Defendants exercised discretion on behalf of the hotels and taxi dispatch companies by using the Venue Butler button to surreptitiously abduct consumers into an online network that charged hidden fees. This was the primary mechanism for Defendants' scheme to steal money from consumers like Plaintiffs. Defendants therefore have a role in directing the affairs of the hotels and taxi dispatch companies that helped facilitate the illegal scheme that is the subject of this class action complaint.

100.     Through the numerous acts of mail and wire fraud detailed above, Defendants conducted or participated in the conduct of the affairs of the hotels and taxi dispatch companies through a pattern of racketeering activity.

101.     Defendants used the Venue Butler button to charge hidden fees to unwitting consumers in numerous cities across the country, including Philadelphia and New York. Therefore, Defendants' activities affect interstate commerce.

102.     The racketeering activities of Defendants directly and proximately injured the business and property of Plaintiffs and the Class. As an immediate and direct result of those racketeering activities, Plaintiffs and the Class paid excessive and illegal additional monies for taxi rides initiated by pressing the Venue Butler button.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

### COUNT IV – VIOLATION OF 18 U.S.C. § 1962(d)

103.     Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

104.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. §

1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

105.    An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). The hotels and taxi dispatch companies that Defendants utilize as "partners" in their scheme are legal entities that together form an association-in-fact enterprise joined for the purpose of selling taxi ride hailing services with hidden fees. The hotels and/or taxi dispatch companies qualify as an "enterprise."

106.    Defendants used the Venue Butler button to charge hidden fees to unwitting consumers in numerous cities across the country, including Philadelphia and New York. Therefore, Defendants' activities affect interstate commerce.

107.    Defendants are associated with each other and with the hotels and taxi dispatch companies that participated in the illegal scheme. Defendants therefore agreed and conspired to engage in the pattern of mail and wire fraud detailed above—a pattern of mail and wire fraud that violated 18 U.S.C. § 1962(c). This conspiracy violated 18 U.S.C. § 1962(d).

108.    Through this agreed-upon pattern of racketeering activity, Plaintiffs and the Class were directly and proximately injured in their business and property. As an immediate result of these racketeering activities, Plaintiffs and the Class were forced to pay hidden fees for taxi rides initiated by pressing the Venue Butler button.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT V – FRAUD

109.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

110.    As discussed above, Defendants made a number of materially misleading statements and/or omissions in connection with the transactions at issue for taxi rides initiated by pressing the Venue Butler button, including:

    a)    Failing to disclose to consumers the existence of the fee before or during the ride;

    b)    Failing to train and/or inform hotels and taxi dispatch companies about the need to disclose to consumers the existence of the fee before or during the ride;

    c)    Purposefully waiting until after the ride is completed before providing any disclosure about the existence of the fee on the screen inside the taxi; and/or

    d)    Purposefully waiting until after the ride has been paid for before providing disclosure about the existence of the fee on a receipt.

111.    Plaintiffs and the Class reasonably relied on these misrepresentations and/or omissions to form the mistaken, reasonable belief that there would be no fee for hailing a cab as there had never been a fee for this service in the past.

112.    Defendants' fraudulent conduct was knowing and intentional. The omissions and misrepresentations made by Defendants were intended to induce and actually induced Plaintiffs and Class Members to take taxi rides with hidden fees.

113.    Defendants' fraud caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

114.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT VI: UNJUST ENRICHMENT

115.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

116.    To the extent this count is inconsistent with any of the others, it is pled in the alternative.

117.    Defendants knowingly charged and retained service fees from Plaintiffs and putative Class members. The Defendants never disclosed the service fees to Plaintiffs and putative class members, and Defendants never gave Plaintiffs and class members the opportunity to reject or consent to paying the service fees. The service fees were wrongfully charged by Defendants on taxi rides initiated by pressing the Venue Butler button.

118.    Plaintiffs and putative Class members had a reasonable expectation that they would not have money wrongfully taken from their credit or debit card accounts.

119.    Upon information and belief, both Curb Mobility and Venue Butler directly each received the money representing the service fees charged to the riders, or a portion thereof, and were unjustly enriched as a result of the transactions at issue.

120.    Under the circumstances, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and members of the putative Classes.

121.    As a direct and proximate result of Defendants' actions, Defendants have been unjustly enriched.  Plaintiffs and other members of the putative Classes have a right to restitution in an amount to be proven at trial.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT VII: CONVERSION

122.     Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

123.     To the extent this count is inconsistent with any of the others, it is pled in the alternative.

124.     Plaintiffs and the Classes had a property interest in the money that Defendants wrongfully charged as a service fee on taxi rides summoned by pressing the Venue Butler button. The money belonged to Plaintiffs and the Classes at all times prior to the taxi rides at issue.

125.     Defendants misappropriated specific and identifiable funds belonging to Plaintiffs and the Classes when Defendants surreptitiously charged a service fee, without authorization or consent, and diverted those funds for their own use.  Defendants had no legal justification for their actions.

126.     In so doing, Defendants have exerted ownership and dominion over Plaintiffs and putative Class members' personal property in denial of Plaintiffs and putative Class members' rights.

127.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class members have been damaged.

128.     The amount that Defendants took from Plaintiffs and the Classes is capable of determination, to an identified sum, by reviewing the service fee amount in the Curb system on taxi receipts from rides initiated by pressing the Venue Butler button.

129.    Upon information and belief, both Curb Mobility and Venue Butler directly each received the money representing the service fees charged to the riders, or a portion thereof, and profited as a result of the conversion of funds.

130.    On behalf of themselves and the Classes, Plaintiffs seek all damages and consequential damages proximately caused by Defendants' conduct.

131.    Defendants intended to cause damage to Plaintiffs and the Classes by converting undisclosed service fees for Defendants' own profit. Defendants' conduct was, therefore, malicious, and Defendants are also guilty of oppression in that their systematic acts of conversion subjected Plaintiffs and the Classes to cruel and unjust hardship in conscious disregard of their rights. Plaintiffs and the Classes are therefore entitled to punitive or exemplary damages.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT VIII: DECLARATORY RELIEF

132.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

133.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

134.    An actual controversy has arisen between Plaintiffs and the Defendants as to the rights, duties, responsibilities and obligations of the parties.

135.    Specifically, Plaintiffs contend, and presumably Defendants dispute and deny, the following:

a)    Defendants were not permitted to charge the service fee;

b)    The service fee was not disclosed;

c)    The Plaintiffs and class did not consent to the service fees;

d)    The Plaintiffs and class were not provided the opportunity to reject the service fees; and,

e)    Defendants are not entitled to retain the service fees.

136.    Resolution of the duties, responsibilities and obligations of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

137.    Plaintiffs seek a Declaratory Judgement to determine a) through e) above.

WHEREFORE, Plaintiffs and the Classes demand declaratory judgment against Defendants that the service fee was wrongfully charged and that Plaintiffs and the classes are entitled to restitution.

## **PRAYER FOR RELIEF**

The following relief is requested by Plaintiffs and members of the Classes:

a.    Certification of this case as a class action;

b.    Appointment of Plaintiffs as representatives of the Classes and the undersigned as Class Counsel;

   c.  Preliminarily and thereafter permanently enjoining the Defendants from engaging in the acts described herein;

   d.  Compensatory damages to Plaintiffs in the amount of money due as a result of Defendants wrongfully charging undisclosed service fees, and such compensatory damages to each member of the Classes in an amount to be determined, including interest on said amounts for Plaintiffs and members of the Classes;

   e.  Restitution damages pursuant to common law;

   f.  For a declaration that Defendants failed to disclose the service fees, that Defendants never gave Plaintiffs and the class the opportunity to consent to the service fees, that Defendants wrongfully charged the service fees, and for such other declaratory relief as the Court may deem proper;

   g.  an order requiring that Defendants disgorge all funds wrongfully withheld from Plaintiffs and the Classes;

   h.  punitive, treble and/or multiple damages;

   i.  litigation costs and counsel fees;

   j.  administrative costs and expenses incurred in the class certification process; and

   k.  such additional relief as the Court may deem necessary and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs herein demand a trial by jury of all issues triable.

Respectfully submitted,

Dated:   March 13, 2023    _____

Kenneth J. Grunfeld
Richard Golomb
Kevin W. Fay
**GOLOMB SPIRT GRUNFELD PC**
1835 Market Street
Suite 2900
Philadelphia, Pa. 19103
215 985-9177
Email:  rgolomb@GolombLegal.Com
        KGrunfeld@GolombLegal.Com
        kfay@golomblegal.com

David L. Woloshin
Dina S. Ronsayro
Jordan Schlossberg
Jonathan Zakheim
**ASTOR WEISS KAPLAN & MANDEL, LLP**
200 South Broad Street
Suite 600
Philadelphia, PA 19102
Phone: (215) 790-0100 | Fax: (215) 790-0509
*E-Mail*: DWoloshin@astorweiss.com
        DRonsayro@astorweiss.com
        JSchlossberg@astorweiss.com
        JZakheim@astorweiss.com

*Attorneys for Plaintiffs and the Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Kenneth J. Grunfeld, hereby certify that on the 13th day of March, 2023, I caused a true and correct copy of the foregoing Amended Complaint to be filed and served via the Court's CM/ECF filing system on all counsel of record.

GOLOMB SPIRT GRUNFELD, P.C.

_____

Kenneth J. Grunfeld
Attorney for Plaintiffs and the Class