**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL ZAKHEIM et al., individually and | : | |
| on behalf of all others similarly situated, | : | |
| Plaintiffs, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 22-4594** |
| | : | |
| CURB MOBILITY LLC et al., | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                    **June 8, 2023**

## MEMORANDUM

This is a consumer rights class action alleging that Defendants secretly charged taxi passengers undisclosed service fees. Defendant Taxi Butler distributes a device that allows hotels and other venues to call a cab at the press of a button. Plaintiffs allege that co-Defendant Curb Mobility illegally charges passengers a fee for its use at the end of any ride that was initiated through a Taxi Butler device. Plaintiffs maintain that this service fee is not disclosed at any point until the conclusion of a taxi ride, and that some passengers first receive notice of the fee after swiping a debit or credit card.

Plaintiffs raise common-law claims for fraud, unjust enrichment, and conversion arising from this conduct. They plead additional claims under RICO, Pennsylvania and New York consumer protection laws, and the Declaratory Judgment Act. Defendants move to dismiss many of the claims asserted. For the reasons below, I will dismiss Plaintiffs' claims under RICO and the Declaratory Judgment Act, as well as the claim for unjust enrichment under New York law. But I will deny the Motion as it pertains to Plaintiffs' remaining common-law claims for unjust enrichment under Pennsylvania law, fraud, and conversion.

## I.      Relevant Background

### A.  Defendants' alleged scheme

Defendants Curb Mobility, LLC ("Curb"), Taxi Butler B.V. d/b/a Venue Butler ("Taxi Butler"), and Yaiks, Inc. ("Yaiks") (collectively, "Defendants") have integrated their respective technologies and technology platforms to enable venues to request taxi rides at the touch of a button.  Am. Compl. at 6, 12, ECF 19.[1]  Taxi Butler and Yaiks conduct business together under the Venue Butler brand.  *Id.*  at 6.

More specifically, Taxi Butler produces a hardware device that it markets to hotels, restaurants, and other venues.  *Id.* at 12.  When an employee at a venue presses a button on the Taxi Butler device, an electronic request is triggered in Curb's network for a taxi to pick-up the passenger at that venue's location.  *Id.*  In addition to operating the network by which venues can call a cab using the Taxi Butler device, Curb also operates the point-of-sale system in many taxis across the country.  *Id.*

Hotels and other venues do not pay to obtain the Taxi Butler device, nor do they pay a fee when they use the device.  *Id.*  The only fee charged for use of the device is passed along to taxi passengers.  *Id.*  Passengers are never given notice of this service fee before their ride, however, and are not given an opportunity to decline the fee.  *Id.* at 5.  Plaintiffs' allegations further suggest that hotels and other venues are unaware that their customers will be charged a fee when a cab is requested using the Taxi Butler device.  *Id.* at 21.

---

[1] The paragraphs in Plaintiffs' Amended Complaint are numbered incorrectly – the numbering restarts on page 15 – so I cite to the Amended Complaint using page numbers rather than paragraph numbers.

**B. Named Plaintiffs' allegations**

The named plaintiffs in this action are Samuel Zakheim, a Pennsylvania resident who requested his cab through his hotel clerk in Philadelphia, and Ariela Ross, a New York resident who requested a cab through her apartment building's front desk clerk in New York City. *Id.* at 6-9.

On August 18, 2022, Plaintiff Zakheim asked the clerk at his hotel in Center City Philadelphia to call him a cab. *Id.* at 2. After he did so, he saw the clerk press a button on a Taxi Butler device. *Id.* Once the clerk ordered a cab, Zakheim waited near the front entrance of his hotel until his taxi arrived. *Id.* At the conclusion of his ride, the screen inside the cab listed the fare as $6.80, which Zakheim supplemented with a $2.00 tip – bringing his total to $8.80. *Id.* at 3. After he swiped his payment card, however, Zakheim discovered that he was charged $11.30, and upon inspecting his receipt realized that he was charged a $2.50 service fee. *Id.* Zakheim was given no indication that the fee would be charged at any time before or during his ride, including on the screen inside the cab (which displayed Defendant Curb's logo). *Id.* at 7-9.

On November 8, 2022, Ross was leaving her apartment building in Manhattan's Upper West Side for Midtown, a trip that she had "taken countless times." *Id.* at 9. When the front desk clerk in her building lobby asked if Ross wanted a taxi, Ross responded affirmatively, *id.*, and the clerk summoned a cab using the Taxi Butler device. *Id.* Because Ross took this trip frequently, she expected it to cost around $15. *Id.* Upon reaching her destination, she was surprised to hear that the total cost of the trip would be $17.50. *Id.* After Ross "demanded an explanation" for this total cost, the taxi driver informed her that use of the Taxi Butler device results in a $2.50 service fee, which the taxi driver had no ability to modify or waive. *Id.* Because Ross did not want to commit fare evasion, she paid the full $17.50 fare in cash. *Id.* Like Zakheim, Ross had no notice

of the service fee that she would be charged when her apartment clerk used the Taxi Butler device, including on the in-cab screen, which advertised Defendant Curb.  *Id*. at 9-11.

### C. Procedural History

Zakheim filed this action on behalf of himself and a nationwide class, asserting common-law claims for unjust enrichment, conversion, a request for declaratory relief, and a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq*., "and other similar statutes nationwide."  ECF 1.  After Defendants moved to dismiss the Complaint, Zakheim amended his original complaint to add Ross as a named plaintiff.  Am. Compl. at 1-11.  The Amended Complaint also added a common-law claim for fraud, a claim under the New York General Business Law ("GBL"), and claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.  Am. Compl. at 20-25.

Defendants now move to dismiss Plaintiffs' common-law claims for unjust enrichment, conversion, and fraud, Plaintiffs' claim that Defendants violated and conspired to violate RICO, and Plaintiffs' request for declaratory relief, pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF 22.

## II.   Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion

### A. RICO

Plaintiffs first claim that Defendants both violated and conspired to violate RICO. Defendants respond that Plaintiffs' RICO claims fail as a matter of law because Plaintiffs do not

adequately allege the existence of an enterprise, as required to plead a RICO violation. I agree and will dismiss the RICO claims, albeit without prejudice.

       1. *Plaintiffs' claim under Section 1962(c) fails because they do not plead an enterprise.*

Count III of the Amended Complaint alleges that Defendants violated Section 1962(c) of RICO, which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Establishing civil liability under this section requires a plaintiff to demonstrate "(1) conduct (2) *of an enterprise* (3) through a pattern (4) of racketeering activity, plus (5) an injury to business or property, and (6) the racketeering activity must have been the 'but for' cause as well as the proximate cause of the injury." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022) (cleaned up and emphasis added).

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The statute therefore describes two types of associations that qualify as an enterprise for RICO purposes: (1) organizations such as corporations and partnerships, and other similar legal entities and (2) "any union or group of individuals *associated in fact* although not a legal entity." *In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 364 (3d Cir. 2010) (citing *United States v. Turkette*, 452 U.S. 576, 581-82 (1981)) (cleaned up and emphasis added).

A so-called "association in fact" enterprise must have three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) "longevity sufficient

to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The enterprise "need not have a hierarchical structure or a 'chain of command,'" but must at the very least function as a "continuing unit" and involve "interpersonal relationships and a common interest." *Id.* at 946, 948. The "basic requirement" of an enterprise is thus "that the components function as a unit." *In re Ins. Brokerage*, 618 F.3d at 374.

Here, Plaintiffs allege that the enterprise at issue goes beyond the Defendants, to include hotels, venues, and taxi dispatch companies, all of whom are "joined for the purpose of selling taxi ride hailing services with hidden fees."[2] Am. Compl. at 23. Plaintiffs assert that "Defendants exercised discretion on behalf of the hotels and taxi dispatch companies by using the [Taxi] Butler button to surreptitiously abduct consumers into an online network that charged hidden fees," and further allege that Defendants "direct[ed] the affairs of the hotels and taxi dispatch companies that helped facilitate the illegal scheme. *Id.* at 24.

But Plaintiffs' own complaint undercuts these allegations. According to Plaintiffs, Defendants "actively conceal" the hidden fee from hotels, venues, and taxi dispatchers by marketing the Taxi Butler ride-calling button "to venues and taxi dispatchers as a free convenience to consumers." *Id.* at 21. Rather than demonstrate that Defendants and these hotels, venues, and taxi dispatchers were all united by the common purpose of inducing consumers into taxis where they would be charged hidden fees, Plaintiffs plead facts to the contrary.

---

[2] Plaintiffs' opposition brief seems to re-frame the enterprise's purpose as "providing a taxi for a passenger to get from one place to another," ECF 23 at 10, but this differs significantly from the allegations presented in the Amended Complaint. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988), and I thus rely exclusively on the characterization of the enterprise set forth in the Amended Complaint.

Entities cannot plausibly pursue the enterprise's purpose if they have no knowledge of what that purpose even entails – and the Amended Complaint simply does not present enough facts to suggest that all the listed entities were pursuing the purpose of "selling taxi ride hailing services with hidden fees." Am. Compl. at 23. Without a plausibly pled shared purpose, there can be no enterprise. And without a sufficiently pled enterprise, Plaintiffs cannot plead all elements of their RICO claim and the claim must fail. *See In re Ins. Brokerage*, 618 F.3d at 369 (holding that after *Twombly*, "it is clear that a RICO claim must plead facts plausibly implying the existence of an enterprise with the structural attributes identified in *Boyle*," including a shared purpose); *see also Rao v. BP Prods. N. Am., Inc*., 589 F.3d 389, 400 (7th Cir. 2009) (upholding dismissal of RICO claims in part because the plaintiff's allegations of an association-in-fact enterprise "do not indicate how the different actors are associated and do not suggest a group of persons acting together for a common purpose or course of conduct").

To the extent that Plaintiffs seek to plead that Defendants *themselves* are the entities comprising the enterprise, *e.g.* "Defendants are associated with each other . . ." Am. Compl. at 25, such generalities are insufficient to show that the Defendants agreed and conspired to participate in a racketeering enterprise to defraud consumers. The mere fact that the Taxi Butler device was connected to Curb's network, *id.* at 12, does not support a conclusion that "Defendants therefore agreed and conspired to engage in the pattern of mail and wire fraud detailed above." *Id.* at 25.

Therefore, I will dismiss Plaintiffs' claim that Defendants violated Section 1962(c). But because this dismissal rests on insufficient factual allegations, I will dismiss this count without prejudice.

> 2. *Plaintiffs' claim under Section 1962(d) fails to sufficiently allege the existence of, or attempt to form, a cognizable enterprise.*

Count IV alleges that Defendants conspired to violate Section 1962(c), in violation of Section 1962(d) of RICO.  *See* 18 U.S.C. § 1962(d).  To plead a conspiracy under this section, a plaintiff must establish that (1) two or more persons agreed to participate in an endeavor that, if completed, would constitute a RICO violation and (2) a member of the conspiracy committed an overt act that constituted a predicate act of racketeering to further the conspiracy.  *Beck v. Prupis*, 529 U.S. 494, 503-07 (2000).  Liability under one of the substantive provisions of RICO is not invariably a prerequisite to Section 1962(d) liability, *Smith v. Berg,* 247 F.3d 532, 537-38 (3d Cir. 2001), but a § 1962(d) claim "must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" *In re Ins. Brokerage*, 618 F.3d at 373 (quoting *Salinas v. United States,* 522 U.S. 52, 65 (1997)).

Plaintiffs' RICO conspiracy claim fails for the same reason that their substantive RICO claim fails: the Amended Complaint does not adequately allege an endeavor that would satisfy the enterprise element.  As with their Section 1962(c) claim, Plaintiffs assert that the "enterprise" undergirding their conspiracy claim involves the "hotels and taxi dispatch companies that Defendants utilize as 'partners' in their scheme."  Am. Compl. at 25.  But as discussed above this allegation is rendered implausible by contradictory allegations elsewhere in the Amended Complaint.  I will therefore also dismiss Plaintiffs' RICO conspiracy claim, though similar to Plaintiffs' substantive RICO claim I will dismiss this count without prejudice.

## B.  Preliminary state law issues

Before reaching the specific merits of Plaintiffs' common-law claims, I address two preliminary arguments that Defendants contend bar them all.  First, Defendants argue that

Plaintiffs' failure to invoke the law of a specific jurisdiction is fatal to their common-law claims for unjust enrichment, conversion, and fraud.  Second, they argue that the voluntary payment doctrine should bar Ross' common-law claims, because she was aware of the fee before she paid her taxi driver.  Neither defense holds.

### 1.   *Failure to invoke the law of a specific jurisdiction (all claims)*

Defendants first argue that Plaintiffs' failure to invoke the law of specific states in alleging unjust enrichment warrants dismissal of this count for failure to state a claim, citing *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 609 (E.D. Pa. 2014) (dismissing unjust enrichment claim on this basis in putative class action).  But the other cases that Defendants cite for this proposition all involved a conglomeration of plaintiffs from a wide array of states, requiring the court to proceed by "cobbling together the elements of a claim . . . from the laws of the fifty states." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (McLaughlin, J.); *see also Krahling*, 44 F. Supp. 3d at 603 (plaintiffs asserted claims in twenty-four different jurisdictions).

Here, in contrast, the operative facts in the Complaint took place almost entirely in Pennsylvania and New York, making it clear that the individual Plaintiffs' claims necessarily arise under the laws of those states.  The dismissal stage is generally an inappropriate time to challenge a party's ability to assert claims on behalf of a nationwide class of consumers, especially where – as here – "the nature of Plaintiffs' claims . . . suggest that the 'success on the claim under one state's law will more or less dictate success under another state's law.'"  *Suber v. Liberty Mut. Ins. Grp.*, No. CV 21-4750, 2022 WL 952889, at *7 (E.D. Pa. Mar. 30, 2022) (McHugh, J.) (discussing

why standing to assert claims is properly addressed at the class certification stage and quoting *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49-50 (1st Cir. 2018)).[3]

As such, for the purposes of ruling on Defendants' Motion, I will address the viability of Plaintiffs' claims under Pennsylvania and New York law, and to the extent Defendants seek to raise this issue again at the class-certification stage, I will rule on the issue then.

### 2. *Voluntary payment doctrine (Plaintiff Ross' claims)*

Defendants also argue that Plaintiff Ross' common-law claims are barred by the voluntary payment doctrine, because Ross was aware of the fee when she paid her taxi driver – unlike Plaintiff Zakheim, who alleges that the fee was not disclosed until after he swiped his payment card.

"The common-law voluntary payment doctrine bars recovery of payments made with full knowledge of the facts." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 740 N.Y.S.2d 396, 397 (N.Y. App. Div. 2002), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003). The doctrine flows from the principle that when a party knows it will resort to litigation over an allegedly unjust payment or demand, "that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." *Gimbel Bros. v. Brook Shopping Ctrs., Inc.*, 499 N.Y.S.2d 435, 439 (N.Y. App. Div. 1986). But the voluntary payment doctrine depends on the premise that a party had sufficient opportunity to challenge a fee beforehand. *See, e.g., Dillon*, 740 N.Y.S.2d at 397 (lead plaintiff paid disputed late charge on cable bill "on at least five

---

[3] I note that states may have differing rules regarding when certain common law claims may be pled together or in the alternative to one another, as discussed below in addressing Plaintiffs' unjust enrichment claims. But this does not alter the core principle that the *elements* of the claims asserted here are unlikely to differ significantly across jurisdictions.

occasions").  As such, the doctrine is "inapplicable" where the payor is under coercion or duress, or "where the payment is made under an appropriate protest or the circumstances attending the payment demonstrate the payor's intention to preserve the right to dispute the legality of the payee's demand." *Jenoure v. Body Sols. Plus, LLC of Westbury*, 912 N.Y.S.2d 370, 371-72 (N.Y. App. Term 2010) (citing 82 N.Y. Jur. 2d., Payment and Tender § 83).

Here, although the facts may not rise to the level of coercion or duress, the circumstances surrounding Ross' payment demonstrate a contemporaneous protest of the fee – suggesting an intent to dispute the fee later.  Ross pleads that she immediately "demanded an explanation" after the higher-than-normal fare was communicated to her.  Am. Compl. at 10.  And she only paid the fare and service fee after the taxi driver emphasized to her that drivers lack the power to "reverse, refund, or otherwise remove" the fee.  *Id*.  She had no opportunity to confront the Defendants named here, and the taxi driver would be placed in the middle of the dispute through no fault of his own.  Based on these facts, it would be unrealistic to conclude that Ross somehow could have litigated this issue before payment was made.[4]  *See Gimbel Bros*, 499 N.Y.S.2d at 439.  The voluntary payment doctrine therefore poses no bar to Ross' claims and those of potential class members who paid the fee under similar circumstances.

### C.  Unjust Enrichment

Moving to the merits of the common-law claims, I first address Plaintiffs' unjust enrichment claims, as Defendants focus their most thorough arguments there.  Defendants argue that Plaintiffs' claims fail to correspond to the traditional elements of unjust enrichment.  Because

---

[4] Even if Ross had a mechanism to have the fee removed from her fare before she paid for it – such as by calling a customer service phone number – it would be absurd to require her to hold the taxi driver until such a dispute could be resolved.

Pennsylvania allows unjust enrichment to be pled as a companion to other claims, such as fraud, this claim survives dismissal.  But New York does not follow a similar rule, and Ross' unjust enrichment claim must therefore be dismissed.

1. *The Pennsylvania unjust enrichment claim may proceed as a companion claim to the other claims under Pennsylvania law.*

Unjust enrichment in Pennsylvania is an equitable remedy that involves "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013).  To prevail on an unjust enrichment claim, a plaintiff must show that: (1) plaintiff conferred a benefit on the defendant, (2) the defendant received the benefit, and (3) the defendant accepted the benefit under circumstances that make it inequitable for the defendant to retain the benefit without paying value for it.  *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. Ct. 2019).

Unjust enrichment claims are most frequently invoked on a quasi-contract theory of liability, in which case the unjust enrichment claim "is brought as an alternative to a breach of contract claim." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) (Robreno, J.).  But such claims can also be brought "based on unlawful or improper conduct established by an underlying claim, such as fraud."  *Id.* at 492; *see also Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (Joyner, J.); *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 338–39 (W.D. Pa. 2020).  Under the latter theory, "an unjust enrichment claim may be pled as a companion . . . to a claim of unlawful or improper conduct as defined by law" and "the unjust enrichment claim will rise or fall with the underlying claim."  *Whitaker*, 198 F. Supp. 3d at 493.

Here, Zakheim's claim for unjust enrichment is clearly based on the same unlawful or improper conduct giving rise to his UTPCPL and fraud claims.  *Compare* Am. Compl. at 27 (stating that Defendants were unjustly enriched because they never disclosed the fee) *with id.* at 18 (alleging that Defendants violated UTPCPL by failing to disclose the fee to consumers) *and id.* at 26 (noting that Defendants defrauded Plaintiffs by not disclosing the fee).  Defendants do not seek dismissal of Zakheim's UTPCPL claim, and as discussed below I will allow Zakheim's fraud claim to proceed.  His claim for unjust enrichment can therefore survive as a companion to his UTPCPL and fraud claims.  *See Lisowski*, 501 F. Supp. 3d. at 339 (allowing unjust enrichment claim to proceed as companion to UTPCPL claim where claims were "premised on the same deceptive conduct").  Moreover, Defendants' argument that Zakheim has not pled a claim because he received something of value in exchange for the $2.50 fee does not have a basis in law, as "a claim of unjust enrichment is not defeated if the plaintiff received value in exchange for the benefit that [they] conferred."  *In re Actiq Sales & Mktg. Pracs. Litig*., 790 F. Supp. 2d 313, 330 (E.D. Pa. 2011) (applying Pennsylvania and Indiana law); *see also In re K-Dur Antitrust Litig*., 338 F. Supp. 2d 517, 545 (D.N.J. 2004) (discussing unjust enrichment in various states, including Pennsylvania).  As such, I will deny Defendants' motion as it relates to the Zakheim's claim of unjust enrichment under Pennsylvania law.

2. *The New York unjust enrichment claim fails because it is duplicative of other claims.*

In New York, an unjust enrichment claim requires a plaintiff to establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  Similar to

Pennsylvania, unjust enrichment cases under New York law typically arise in circumstances where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello v. Verizon New York, Inc*., 967 N.E.2d 1177, 1185 (N.Y. 2012).  But unlike in Pennsylvania, an unjust enrichment claim is not available in New York "where it simply duplicates, or replaces, a conventional contract or tort claim" and cannot be used as "a catchall cause of action . . . when others fail." *Id.*; *see also Scifo v. Taibi*, 156 N.Y.S.3d 40, 44 (N.Y. App. Div. 2021).  Because the facts giving rise to the unjust enrichment claim here are the same facts giving rise to Plaintiff Ross' claims under the New York General Business Law and for fraud, her unjust enrichment claim is duplicative and must be dismissed.  *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (noting that "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of General Business Law claims").

### D.  Conversion

Defendants challenge Plaintiff Zakheim's conversion claim on the merits, but I conclude that he has sufficiently pleaded a claim for conversion under Pennsylvania law.[5]

In Pennsylvania, the tort of conversion involves "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Underhill Coal Mining Co. v. Hixon*, 652 A.2d 343, 345 (Pa. 1994) (citation omitted).  "The attempt to exercise control over another's property must be intentional, but conversion does not rest on proof of specific intent to commit a wrong." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000) (quoting

---

[5] For Plaintiff Ross' conversion claim under New York law, Defendants rely solely on the voluntary payment doctrine to justify dismissal.  Having previously concluded that this doctrine does not bar Ross' claims, I will allow Ross' conversion claim under New York law to proceed, as well.

14

*Underhill*, 652 A.2d at 345); *see also Bank of Landisburg v. Burruss*, 524 A.2d 896, 899 (Pa. Super. Ct. 1987) (noting that "there is no inconsistency between finding that a defendant acted in good faith" and in finding that a defendant committed the tort of conversion).  And while conversion often arises in situations affecting more tangible personal property, money "may be the subject of conversion," so long as it is identifiable.  *McKeeman,* 751 A.2d at 659 n.3 (Pa. Super. Ct. 2000) (quoting *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987)); *see also Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp*., 855 A.2d 818, 827 n.21 (Pa. 2004).

Defendants claim that Plaintiff Zakheim cannot state a claim for conversion, because he "owed Defendants for the efforts they undertook" to provide him a pre-arranged ride, and that conversion cannot be alleged where they simply accepted "compensation that Plaintiff owed them."  ECF 22-1 at 13-14.  But as pled in the Amended Complaint, Zakheim did not ask Defendants to supply any services.  He therefore had no reason to believe that Defendants would be providing him a service when he asked the hotel clerk to call him a taxi.  Am. Comp. at 1.  It follows that he had no reason to expect a service fee for use of Defendants' services to appear on his taxi receipt – particularly a fee disclosed only after he swiped his payment card.

Moreover, the facts in the Amended Complaint firmly establish that Zakheim did not give Defendants consent to charge his payment card the disputed fee, but that Defendants charged the fee anyway.  "A deliberate taking of another's personal property without consent is the strongest and clearest case of conversion." *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968) (applying Pennsylvania law).  Zakheim's conversion claim therefore survives dismissal.

### E.  Fraud

Defendants do not present any argument as to why the common-law fraud claims must be dismissed on the merits, beyond their previously addressed arguments about Plaintiffs' failure to

invoke the law of a specific jurisdiction and regarding the voluntary payment doctrine.  Having already discussed these arguments, I will deny the motion to dismiss as it pertains to common-law claims of fraud.

### F.  Declaratory Judgment

Finally, Defendants move to dismiss Plaintiffs' request for declaratory relief.  In their Amended Complaint, Plaintiffs' final count seeks a declaratory judgment stating that the disputed service fee was not disclosed, that Plaintiffs did not consent to the fee and were not given an opportunity to reject the service fee, that Defendants were not permitted to charge the fee, and that Defendants are not entitled to retain the fees.  *See* Am. Compl. at 30.  But declaratory judgment "cannot be obtained for alleged past wrongs."  *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 321 (E.D. Pa. 2021) (McHugh, J.); *see also CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995)) (emphasizing that the "purpose of a declaratory judgment is to 'declare the rights of litigants,'" and the remedy is "by definition prospective in nature").  Given that Plaintiffs' request for declaratory relief seeks to adjudicate Defendants' prior conduct, this count must be dismissed.

### IV.  Conclusion

For the reasons set forth above, Defendants' Motion will be granted in part and denied in part.  An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge